Mr. Mattingly, good morning. Good morning and may it please the court. I'm William Mattingly and I have the pleasure of going last on a six case docket which is as excited as you can be when you check in in the morning. This is a Black Lung Benefits case that arises from the agency. Unlike this court where you get dissenting opinions, the Benefits Review Board, the Intermediate Appellate Review Board doesn't frequently have dissenting opinions. So that sets this case apart in one way. It has one major medical legal issue that we're asking you to resolve and that is whether or not chronic and acute comes into play when you're trying to determine if there's total disability. Why does that matter in this case? Given the years of employment, this gentleman's widow could avail herself of a 15-year presumption if she proves that he was totally disabled prior to his death. There's a split of medical opinion on that question. The administrative law judge looked at it and said, based on the hospitalization records, I'm convinced Dr. Shabda finds, and I infer that he would find, since this gentleman was on a ventilator, he couldn't go back to work since he was totally disabled. The physicians we relied on said you can't look at that hospitalization. It's all due to an acute pulmonary impairment and disease. You have to go back and figure out if there was a pre-existing disabling impairment from pneumoconiosis. We don't think there was. So the director has very strongly come out in their brief and said we are wrong. Judge Boggs from the board is wrong. You don't even consider acute or chronic when you look at pulmonary impairment. They point to the 15-year presumption in the statute. And sure enough, it just says pulmonary impairment, pulmonary respiratory impairment in section 30 U.S.C. 921. It doesn't say acute or chronic. But go back up in the statute in that same provision. It directs the secretary to set the standards to promulgate and define total disability. And when the director did that at 20 CFR 718-204, I think they very clearly said we're only going to consider chronic pulmonary impairments. I've been doing this work since I got out of law school. For almost 40 years when I started with the Department of Labor and then migrated to defend coal companies, I've always looked at that section as requiring chronic pulmonary impairment. Not only is there a reference to that early on in the general provision, but the director specifies if you've got non-pulmonary conditions that are causing a pulmonary impairment, they have to be a chronic pulmonary impairment. What language are you looking at? I'm looking at the language in 718-204A, the general provision. And granted, the director's right. They didn't say acute. They just said chronic there and they didn't say anything about if there is a primary pulmonary disease. But you can't look at the regulation without seeing how the director applies it. And when they go down, there are various different studies that administrative law judges typically look at to assess pulmonary impairment. Breathing tests, pulmonary function studies, arterial blood gas studies. And the director very specifically explained in the regulations and the appendices to the regulations that you can't rely on a pulmonary impairment to assess pulmonary impairment. And that's what we're not interested in in these disability cases. And I think that's also consistent with the definition of pneumoconiosis. Whereas Congress defined pneumoconiosis, and the director has inherited that in the regulations, it means a chronic dust disease of the lung and it's sequelae, including respiratory and pulmonary impairments arising out of coal mine employment. What the director's forgotten is the definition of sequelae, a condition that is a consequence of the disease. And when you read that together with the way the statute starts off with chronic, I don't think it infers, I think it defines the disease that Congress is interested in compensating here as a chronic disease that causes chronic pulmonary or respiratory impairments. Can you help me on that, Mr. Manley? Because that seems to me, and I'll ask your adversaries for the same point, it seems to me to be a little bit circular. Because you're looking for, as you say, not an acute condition at the time of death, but rather whether there was a chronic condition, correct? Correct. But you're looking at whether there was a chronic condition to figure out whether the miner had pneumoconiosis, which itself is defined as a chronic dust disease. So it seems like, just help me unpack that, it seems circular. It is. But what you're really looking for is, is there a pulmonary impairment? Because they're entitled to this 15 year presumption. That is totally disabling? Right. So we're not even getting to the pneumoconiosis question. But my argument is, the way the director defined pulmonary impairment in 718-204, they only took into account chronic pulmonary impairments, not acute ones. And by explaining you can't rely on studies that are affected by acute diseases, that is consistent with the way Congress defined pneumoconiosis as being a chronic disease with its But it doesn't preclude consideration of doctors' opinions that have relied on those tests. Correct. But the question that the administrative law judge has to answer is, did the doctor separate chronic from acute? And that's where Judge Boggs agreed with our position below, before the board, that this administrative law judge didn't make that differentiation when he considered the medical opinions, and that makes his considerations invalid. If you are correct that you have to prove a chronic condition in order for the 15 year presumption to be invoked, what's the difference with the 10 year? 10 year presumption deals with the existence of pneumoconiosis. So in Blacklund claims you've got four elements. Which is a chronic disease. Yes. So it would be similar, but you can have pneumoconiosis, a dust disease, that arises out of other things than coal dust exposure. You can have it arise out of rock exposure when people are doing sandblasting. That would not qualify as pneumoconiosis. It would be presumed to be pneumoconiosis if someone worked more than 10 years. If they worked less than 10 years, they'd have to show that it was. Mr. Manley, we get some Blacklund Act litigation, but not nearly as much as the 4th and 6th circuits. Have either of those courts addressed this legal point that you're making? They have not. And that seems odd to me. It just has not come up in the cases. And why is that? Because most administrative law judges apply the regulations, as I am suggesting, and they look for chronic impairment rather than acute impairment. I'd like to save the rest of my time for rebuttal. Yeah, you're welcome to. Mr. Rowles, good morning. Good morning. Please, the court. Austin Vows. I'm here arguing for Bernadette Staton, who is Mr. Staton's widow in this claim. The coal company really makes two primary arguments here. One is that total disability must be proven chronic. And the other is that the board erred by adding language to the ALJ's reasoning. I'm going to address that second one first because it's really easy to get through. The board's reasoning is practically irrelevant at this point because this court does essentially the same review. What the court does is they allow the ALJ to decide the facts, like a jury would, and then they review the questions of the law de novo. So while the coal company has spent a lot of its brief arguing that this court reweigh the evidence and decide these facts, the precedent is clear, the standard of review is clear, that this court should not do that. Rather, it should afford the ALJ the discretion as the fact finder. So that covers the first issue. Now back to the... Hold on, let me pause you on that. What role, what if any role in our review does the Benefits Review Board opinion have? I think none at all, to be honest with you. I don't think that, I mean, you could make a different decision than by reviewing the ALJ's decision and coming to a different outcome. But there's nothing really for you to review that the board decided. They don't decide the issues of fact, they just decide the issues of law. You all do the same thing. So that's my take on that. Is it okay to go back to the... Yeah, go right ahead. Go back to the first point. So whether total disability must be proven chronic, the answer to that inquiry is easy to find because total disability is defined in the regulations as Mr. Battingly explained. The U.S. Code actually defers to the regulations on that issue. But he is actually pointing it largely at the wrong regulation. It's 20 CFR 718-204B, Section B, not Section A. That's where you get into the specifics here. And the regulation explains that a minor is considered totally disabled if the minor has a pulmonary respiratory impairment which, standing alone, prevents the minor from performing his or her usual frontline work and from engaging in gainful employment in the immediate area of his or her residence requiring the skills or ability comparable to those in any employment in a mine or mines in which he or she previously engaged with some regulatory over a substantial period of time. Lacking in that definition of total disability is the word chronic. Page 34 of my brief, I've got a whole section dispelling the coal company's contrary claim. The coal company, they've artfully worked, tried to work the word chronic into the total disability definition with its legal argument. But if you read the regulation, it's just not there. Even more, under 30 USC 921C4, the presumption that a minor's death or total disability is due to pneumoconiosis gets invoked by showing a total disability and that a minor has more than 15 years of coal mine employment. Mr. Staten had 28 years of coal mine employment. But as the court was alluding to earlier, what's key in that analysis, in that framework, is that pneumoconiosis and causation both get presumed. So one should not have to prove a chronic condition to have a chronic condition presumed by a statutory presumption. It is very circular reasoning that the coal company has engaged in there. Regardless, though, of whether the coal company's argument on chronicity is accepted or not, it shouldn't be, but regardless, it does not matter because in this case, the ALJ found Mr. Staten's condition to be chronic. The administrative law judge accepted Dr. Chavda's opinion. This is on page 15 through 17 of the joint appendix. Dr. Chavda found total disability due to a chronic condition. The ALJ found Dr. Chavda's opinion well-documented, well-supported, and accorded probative weight. So it doesn't really matter, in this case, the issue. If the law were, as the coal company suggests, to be a harmless error. Mr. Staten being found totally disabled isn't really controversial. He had objective tests showing respiratory disability back to at least 2013. He died in 2017. He had a qualifying pulmonary function test under the federal regulations that would make him be found totally disabled. He had diffusion capacity that was low that, according to the AMA guides, would show that he had significant impairment. He had an oxygen walk test where he only walked for two minutes. He walked for two minutes. And his oxygen desaturated to 87% after walking for two minutes. So just a few other notes I want to hit. The presumption that a minor is totally disabled due to pneumoconiosis that we've been discussing. It existed in a version of the act that was in play in the 1970s, but Congress actually deleted it in 1981. And it was missing from the law, that presumption. You didn't get that presumption. You had to prove everything from 1981 until 2010. In 2010, Senator Byrd put it into the Affordable Care Act, and it was re-implemented in 2010 with the Affordable Care Act. So it's back in place. So if you're reading the President and you're looking at these different decisions, the framework's different from 1981 to 2010 than it is currently and than it was in the 1970s. And last but not least, just to explain, you know, the quote from the Sixth Circuit, and they're looking at the Blackland Benefits Act. It said, it's remedial legislation that should be liberally construed to include the largest number of minors within its entitlement provisions. The difficulties faced by minors with severely limited resources and proving causation are considerable. Congress enacted and subsequently amended the act in large part to permit benefits to be awarded to minors whose entitlement under state workers' compensation program were precluded by burdensome causation requirements. And we believe that's what the co-company here is advocating for, these burdensome causation requirements that, really, that's the whole purpose of the act is to avoid that here. So with that being said, I appreciate your time today, and I would ask you to decide this case in Mrs. Staten's favor. Thank you. Yep, you're welcome. Very well. Mr. Goldberg, good morning. My name's Jeff Goldberg. I'm representing the Director, Office of Workers' Compensation Programs. And really, the question is whether the claimant bears the burden of proving that a minor's pulmonary disability is chronic in order to invoke the 15-year presumption of entitlement. And really, this issue begins and ends with the plain language of the act in implementing regulations. Did want to point one thing out first. A lot of this is going to sound redundant after the two arguments you've just heard. Section 718.204A that says, causes a chronic respiratory or pulmonary impairment, the last phrase of that sentence says, is or was totally disabled due to pneumoconiosis. That is the import of the word chronic because there is the question of what causes the disability. Now, the 15-year presumption is based, invoking the 15-year presumption is based on two things. The minor has to, or the claimant has to prove at least 15 years of coal mine employment and a totally disabling respiratory impairment. The act does not define total disability. It assigned that responsibility to the Department of Labor. We defined it as a pulmonary or respiratory impairment which standing alone prevents or prevented the minor from performing his or her usual coal mine work. There is no mention of chronicity. In order. No mention of what? Chronic condition, a chronicity. It's an awkward word. But to rebut the presumption, where the burden shifts in this case to consolidation or to console coal, they can either establish that by proving the absence of pneumoconiosis or that the disease did have no, played no role in causing the minor's death. The act does, unlike total disability, define pneumoconiosis and it defines it as a chronic condition. It is therefore a console's burden to prove that the disease is not chronic. If they can prove that the disease that caused the minor's death was not chronic, they have by definition proved that the minor did not have pneumoconiosis or that the pneumoconiosis didn't play a role in the minor's death. Mr. Kohlberger, since you are very familiar with this area of the law, Mr. Manningly suggested that the ALJs generally apply his approach to the 15-year presumption and require proof of chronic. Do you agree with that representation? No, I don't think I have ever seen a judge, an ALJ say, this minor is disabled but it's disabled to an acute rather than a chronic impairment because what the judges do is they base their opinion on the medical opinions and a doctor will say this minor is disabled or is not disabled and it's due to pneumoconiosis or it's not due to pneumoconiosis. If it's not due to pneumoconiosis, he doesn't, it's not, that's, if it is due to pneumoconiosis, he has a chronic disease causing the disability. If it's not due to pneumoconiosis, the minor doesn't get benefits. It really is just that simple. Has there been any other circuit address this question to your knowledge? No, here I do agree with Mr. Manningly. I haven't seen one. There are no other questions? Thank you very much for your time. Mr. Kohlberger, thanks to you. It's always nice to have the director agree with me on something. So we'll count that at least as a partial victory. Let me pinpoint the argument. The director's position doesn't make sense because here Dr. Shabda said I can't use the blood gases from the hospitalization because they were due to an acute illness. The administrative law judge agreed and said I can't use those tests to establish disability because they're due to an acute illness. You can't have it both ways. The director's defined under section 718.204C medical criteria and that trumps the B provision that Mr. Valls was talking about. But that medical criteria must be done when there is not an acute condition. It is inferred. It's not well written. It's inferred that only chronic pulmonary impairments are what you use to establish total disability. And that's the crux of the case. If you agree with the director that you don't need to do anything then their regulation has to fail. It needs to be thrown out because they've defined total disability and excluded acute conditions in the medical criteria for total disability. So it makes no sense. Thank you. Okay, Mr. Matterly, thanks to you. We appreciate the argument on both sides. We'll take the appeal under advisement and that will conclude today's argument.